**IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF FLORIDA PANAMA CITY DIVISION**

**GREGORY R. LANE,**

**Plaintiff,**

**vs.** **Case No. 5:08cv242-RS/WCS**

**KAREN POTTS, et al.,**

**Defendants.**

**____________________________/**

**REPORT AND RECOMMENDATION**

Plaintiff, a *pro se* prisoner, has filed a motion requesting leave to file excess pages, doc. 91, and the proposed fifth amended complaint, doc. 93. Plaintiff simultaneously provided four copies of the fifth amended complaint. Additionally, Plaintiff filed a motion requesting service on three Defendants (Gilo, Abramson, and McNeil) to simply be served on counsel for Defendant Stalnaker. Doc. 92. The motions are separately addressed in an order entered this day.

This case involves surgery that Plaintiff had. Plaintiff alleges that he was called into the office of Defendant Stalnaker (formerly Potts) in March, 2005, to sign a form to consent to counseling for one year. Doc. 93, p. 5. He alleges that she told him the sessions were for "stress management," and that he could withdraw at any time. *Id*. At

some point during counseling, Stalnaker "introduced a series of hypothetical, misleading questions and scenarios that ere sexual in nature," and Plaintiff objected. *Id*., p. 5(a). He then withdrew from counseling. *Id*. He alleges that Stalnaker failed to inform him that the counseling sessions "were actually FDOC regulated sex offender screenings that would be disseminated to other state agencies, nonmedical staff members, and to others currently unknown to Plaintiff." *Id*. Plaintiff further alleges that on about June 15, 2005, he had a physical examination by Defendant Gilo, and was told that he had an undescended testicle. *Id*., p. 5(a). Surgical removal was recommended. *Id*. He was told that if he refused, "there would be a substantial risk" that he would develop cancer. *Id*. Plaintiff alleges that he consented under that "duress." *Id*. Dr. Abramson performed the surgery. *Id*., p. 5(b). Plaintiff contends he has suffered intensifying pain since the surgery and his "condition has gradually worsened." *Id.*, p, 5(c). Additional allegations will be discussed ahead.

Unexecuted returns were filed as to Defendant Gilo, doc. 30, and Defendant Abramson, doc. 38. Only Defendants Stalnaker, and Mercer, *see* doc. 29, have been served. A notice of appearance was filed on behalf of those Defendants on April 30, 2009. Doc. 34.

When those unexecuted returns were filed, Plaintiff was directed on numerous occasions to advise how he wanted to proceed in light of the inability to serve the Defendants. *See* docs. 31, 40, 44, and 51. Plaintiff had been given a deadline of May 1, 2009, doc. 31, and then August 20, 2009, to provide information as to the whereabouts of Defendants Abramson and Gilo, time which was provided to Plaintiff pursuant to his motion, doc. 43. *See* docs. 40, 44. Plaintiff was advised in an order

dated August 26, 2009, that Plaintiff had exceeded the time for service, and Plaintiff was acting to delay this case. Doc. 58. Plaintiff was informed that he had been given the "full summer to locate" the two missing Defendants, and "no further time" would be provided. *Id.*, at 3. Plaintiff has now filed a fifth amended complaint seeking to revive claims against persons who were not served.

Plaintiff initiated this proceeding in the Middle District of Florida in late July, 2008, and it was transferred to this Court on August 1, 2008.[1] Docs. 1, 4. The Defendants were Potts, Gilo, Abramson, an unknown correctional officer, and Judge Wattles. Plaintiff was directed to file an amended complaint, doc. 7, which he did on August 28, 2008, doc. 11. That version of the complaint brought claims against Defendants Potts, Gilo, Abramson, John Doe Warden or Assistant Warden, Secretary McDonough, and Monica David. Doc. 11. Then, on January 8, 2009, Plaintiff filed a second amended complaint presenting claims only as to Defendants Potts, Gilo, Abramson, and Mecca. Doc. 25. It was that version of the complaint that was sufficient for service, doc. 26, and which was served on Defendants Stalnaker (formerly known as Potts), and Mercer, but identified by Plaintiff as Mecca, *see* doc. 29, in March of 2009.

When Plaintiff filed a motion to supplement his second amended complaint, doc. 47, Plaintiff was ordered to file a third amended complaint so that all allegations and requests for relief could be provided in one document. Doc. 51. Plaintiff's third amended complaint was filed on August 27, 2009. Doc. 60. Around the same time Plaintiff filed the third amended complaint, doc. 60, he requested another complaint

---

[1] This history was also recently set forth in my order dated January 11, 2010. Doc. 81.

form, doc. 61, and it was assumed Plaintiff desired to file a fourth amended complaint. *See* doc. 62.

Plaintiff ultimately filed the fourth amended complaint on September 28, 2009. Doc. 63. Defendants named therein were Karen Potts, Monica David, and Prison Health Services, Inc. Doc. 63, p. 1. Plaintiff, thus, deleted his claim against Defendants Gilo, Abramson, Mecca (or Mercer), and the other prison officials previously named. After review of the fourth amended complaint, Plaintiff was advised of many of its deficiencies and directed to file a fifth amended complaint. Doc. 81.

Now that Plaintiff has submitted his fifth amended complaint, doc. 93, it has been reviewed. Plaintiff has once again listed Dr. Mark Abramson and Dr. N.B. Gilo as Defendants. Doc. 93. Plaintiff's course of conduct in this case is not permissible. Plaintiff cannot submit a complaint naming persons as Defendants, then delete those Defendants in an amended complaint, and then add persons back into to yet another amended complaint, and so forth. This practice of addition and omission cannot continue.

Plaintiff's claims against Defendants Abramson and Gilo must be dismissed as Plaintiff's efforts to serve them previously were unsuccessful, Plaintiff was given from March, 2009, through August, 2009, to determine the whereabouts for those Defendants or voluntarily dismiss claims against them. Plaintiff failed to respond to those orders and advise how he wished to proceed since he could not serve those Defendants. Plaintiff was advised that under FED. R. CIV. P. 4(m), a Defendant must be served within 120 days after the complaint is filed. Docs. 26, 32 and 58. That time has expired and Plaintiff may not revive that time by continuing to file amendments which

delete and add Defendants. When the 120 day period is passed and a Defendant is not served, "the court - on motion or on its own after notice to the plaintiff - must dismiss the action without prejudice against that defendant . . . ." FED. R. CIV. P. 4(m). Plaintiff has had an abundance of opportunity and time to locate the Defendants and seek service. Plaintiff did not do so, and the claims must be dismissed as to Defendant Gilo and Abramson.[2]

Plaintiff may not revive his claims against the Defendants through amended complaints. Under FED. R. CIV. P. 15(c)(1)(C), for Plaintiff to add Defendants in this case, he must show that the amendment "asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out . . . in the original pleading." That he has done. *See* doc. 4-1. However, Plaintiff must meet two other requirements under Rule 15(c)(1)(C). He must show that "withing the period provided by Rule 4(m) for serving the summons and complaint, the party to be brought in by amendment" (i) "received such notice of the action that it will not be prejudiced in defending on the merits; and (ii) knew or should have known that the action would have been brought against it, but for a mistake concerning the property party's identity." Plaintiff does not meet either of those two requirements.

None of the Defendants to be added received notice of the action within the 120-day time period for service and summons, to avoid prejudice. *See* Cliff v. Payco Gen. Am. Credits, Inc., 363 F.3d 1113, 1131 (11th Cir. 2004). Defendants Gilo and

---

[2] Consequently, any Eighth Amendment claim Plaintiff might have had against Dr. Abramson cannot proceed. It is doubtful, however, that Plaintiff had such a claim because there are no factual allegations from which one might conclude that Dr. Abramson was deliberately indifferent to Plaintiff's serious medical needs.

Abramson are unserved, have not been located and, thus, could have no notice of this action. No order has been entered to serve Defendants David and McNeil. Moreover, the third requirement is not met ("but for a mistake concerning the proper party's identity") as Plaintiff has not been mistaken about those persons. FED. R. CIV. P. 15(c)(1)(C)(ii). Plaintiff was provided with opportunities to clarify whether he had located the Defendants or, perhaps, he was mistaken as to their identity. *See* docs. 31 and 40. Plaintiff did not do so. There is no suggestion that Defendants Gilo or Abramson knew or should have known an action would be brought against them. The fifth amended complaint cannot proceed against Defendants Abramson and Gilo and the complaint against these Defendants should be dismissed *sua sponte*. Plaintiff's attempts to re-start a 120-day deadline by simply filing another amended complaint cannot be permitted to continue. Service was directed on February 4, 2009, doc. 26, and that date started the 120-day clock. At this point, some 415 days have passed, and Plaintiff has exceeded the 120-day time period by nearly 300 days. The claims against Defendants Gilo and Abramson must be dismissed.

As for Plaintiff's claim against Defendant Walter McNeil, Plaintiff contends based on "information and belief" that the medical issues which are at the core of this action (surgery for an "undescended testicle"), were part of the Secretary's "policies, customs and procedures . . . to retroactively subject Plaintiff to physical or surgical castration and/or involuntary civil commitment proceedings in retaliation or reprisal for his refusal to continue participating in Defendant Stalnaker's alleged counseling sessions." Doc. 93, p. 5(g). This conclusory allegation is insufficient as Plaintiff fails to identify *any* policy, custom or procedure that was involved in the surgery in June through November,

2005. Indeed, Defendant McNeil was not the Secretary at that time; he was appointed to office in February, 2008. Plaintiff's failure to identify any policy or procedure of general application is fatal to this claim.

Plaintiff also alleges that Defendant McNeil has been "grossly negligent in supervising subordinates who committed the wrongful acts." Doc. 93, p. 6. Negligence is not a valid claim in a civil rights action. A state official's negligent conduct, even though it causes injury, does not constitute an actionable deprivation under § 1983. County of Sacramento v. Lewis, 523 U.S. 833, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998); Daniels v. Williams, 474 U.S. 327, 331, 106 S. Ct. 662, 665, 88 L. Ed. 2d 662 (1986). Plaintiff has not alleged a constitutional violation by Defendant McNeil, and the complaint should be dismissed as to McNeil.

Plaintiff alleges that "the Secretary's policies, procedures and custom implemented in this case, i.d. limiting Plaintiff's available treatment option to the invasive surgical castration procedure . . . violates Ex Post Facto Principles and Plaintiff's Constitutional right against Double Jeopardy." *Id.*, p. 7(d). That claim has no factual basis, as there is no involvement by the Secretary in recommending medical treatment. Moreover, the medical procedure performed on the undescended testicle has no connection to a valid ex post facto or double jeopardy claim.

Plaintiff also alleged that Defendant Monica David was "negligent in supervising subordinates." Doc. 93, p. 7(c). Again, a claim of negligence is insufficient. Plaintiff attempts to broadly claim that Defendant David "on information and belief may be found 'personally involved' in the conspiracy alleged in this complaint by creating, incorporating, and implementing the aforementioned policy or custom of subjecting

conditional releasees such as Plaintiff to physical or surgical castration . . . ." *Id*. Plaintiff fails, however, to present any statement of facts which reveal any coordination, communication, or effort to conspire against Plaintiff and subject him to castration. Plaintiff may not suggest a "conspiracy" without any facts to support such a theory. The vague and conclusory nature of Plaintiff's allegations are evident from this assertion made in the fifth amended complaint:

> With respect to his Initial § 1983 complaint and all subsequently amended versions, Plaintiff alleges that each of the named defendants participated in an organized, arbitrary and illegal involuntary physical or surgical castration process for sex offenders that violated provisions of Plaintiff's Eighth, Fourteenth Amendment rights under the U.S. Constitution, and other applicable laws.

*Id.*, p. 5(d). No factual allegations are presented to show or allege how any named Defendant participated in an "organized" process to castrate sex offenders. This conclusory claim cannot proceed against Defendant David, or any other Defendant.

Additionally, a claim that Defendants David or McNeil failed "to act on information indicating that said unconstitutional acts/violations were occurring" does not provide any factual information. *Id.*, p. 6. This statement fails to state what action Plaintiff is referring to that he believes is an unconstitutional act, when such an act occurred, or even more importantly, how or when Plaintiff provided notice to the particular Defendant. The claim is insufficient on its face.

That leaves only the claim against Defendant Stalnaker (formerly Potts). This Defendant has been served, and could file a response if directed. Plaintiff claims that Defendant Stalnaker "conspired, collaborated, or conferred with the other defendants named in this complaint, to subject Plaintiff to involuntary physical or surgical castration

and involuntary civil commitment proceedings - in accord with later-enacted FDOC policies/procedures devised especially for conditional release eligible inmates - in revenge, retaliation, or reprisal for Plaintiff's refusal to continue participating in her alleged counseling sessions, which were actually FDOC regulated sex offender screenings." Doc. 93, pp. 7 and 7(a).

To bring a valid claim for reprisal or retaliation, Plaintiff must provide allegations which show that adverse action was taken against him as a prisoner in retaliation for the exercise of his First Amendment rights. *See* Farrow v. West, 320 F.3d 1235, 1248 (11th Cir. 2003); Mitchell v. Farcass, 112 F.3d 1483, 1490 (11th Cir. 1997); Wright v. Newsome, 795 F.2d 964 968 (11th Cir. 1986); Adams v. James, 784 F.2d 1077, 1080 (11th Cir. 1986). In the prison setting "[t]he state may not burden [First Amendment rights] with practices that are not reasonably related to legitimate penological objectives . . . nor act with the intent of chilling that First Amendment right." Harris v. Ostrout, 65 F.3d 912, 916 (11th Cir. 1995) (citing Turner v. Safley, 482 U.S. 78, 85-89, 107 S.Ct. 2254, 2260-61, 96 L.Ed.2d 64 (1987), and Wildberger v. Bracknell, 869 F.2d 1467, 1468 (11th Cir. 1989)).

In general, a prisoner may establish retaliation by "demonstrating that the prison official's actions were 'the result of his having filed a grievance concerning the conditions of his imprisonment.' " Farrow, 320 F.3d at 1248 (citing Wildberger, 869 F.2d at 1468). The prisoner must, however, come forward with more than "general attacks" upon a defendant's motivations and must produce "affirmative evidence" of retaliation from which a jury could find that plaintiff had carried his burden of proving the requisite motive. Crawford-El v. Britton, 523 U.S. 574, 600, 118 S.Ct. 1584, 1598, 140 L.Ed.2d

759 (1998) (citations omitted). Here, there are no allegations that Plaintiff was punished or suffered retaliation because he was filing grievances or complaining about his medical care or the like. Instead, Plaintiff contends he suffered retaliation because he no longer wanted to continue counseling sessions with Defendant Stalnaker. That is not protected First Amendment activity, and Plaintiff's claim is insufficient on its face.

Although mindful that Plaintiff may not be held to a heightened burden of proof, *see* Crawford-El, 523 U.S. at 580- 86 (holding that in retaliation claim prisoner could not be required to show "clear and convincing" evidence of defendant's unconstitutional motives), courts should approach prisoner claims of retaliation "with skepticism and particular care" due to the "near inevitability" that prisoners will take exception with the decisions of prison officials and "the ease with which claims of retaliation may be fabricated." Dawes v.. Walker, 239 F.3d 489, 491 (2nd Cir. 2001), impliedly overruled in part on other grounds by Swierkiewicz v. Sorema N.A., 534 U.S. 506, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002). Here, Plaintiff's conclusory assertion does not reveal that Plaintiff suffered retaliation. Indeed, even the timing of the events does not lend itself to Plaintiff's claim. Plaintiff was called to give consent to counseling sessions in March of 2005. Plaintiff gave his consent and at an unspecified time Plaintiff withdrew his consent to participate in the counseling. On June 15, 2005, Plaintiff was given a physical examination by Defendant Gilo and the surgery was recommended. Some two months later, Plaintiff's examination appears to be unrelated to the counseling. Plaintiff has failed to provide any facts connecting those events, and the claim must be dismissed as insufficient.

In short, Plaintiff has had ample opportunity to submit a complaint in accordance with Rule 8 and which presents facts alleging the violation of a Constitutional right. Plaintiff has not done so. Because this case has been continuing, with ever changing claims, Defendants, and facts, it is time to bring it to a close. Plaintiff has no viable claim against any Defendant who has been served, and it is well beyond time to bring in new Defendants as explained above.

Accordingly, it is **RECOMMENDED** that Plaintiff's fifth amended complaint, doc. 93, be **DISMISSED** for failure to state a claim upon which relief may be granted pursuant to 28 U.S.C. § 1915(e)(2), and that the order adopting this report and recommendation direct the Clerk of Court to note on the docket that this cause was dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

**IN CHAMBERS** at Tallahassee, Florida, on March 29, 2010.

s/ William C. Sherrill, Jr.
**WILLIAM C. SHERRILL, JR.**
**UNITED STATES MAGISTRATE JUDGE**

## NOTICE TO THE PARTIES

**A party may file specific, written objections to the proposed findings and recommendations within 14 days after being served with a copy of this report and recommendation. A party may respond to another party's objections within 14 days after being served with a copy thereof. Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**